MOEA'I UILIATA, Plaintiff

v.

UIVA TE'O and SI'UFANUA AITU, Defendants


ALAI'ASA FILIFILI, Plaintiff

v.

UIVA TE'O, Defendant


MOEA'I UILIATA, Plaintiff

v.

ALAI'A FILIFILI, CHIEFS OF FALENIU,
SI'UFANUA AITU, and TUIA'ANA MOI, Defendants

LT No. 13-85
LT No. 42-85
LT No. 7-86

High Court of American Samoa
Land & Titles Division

September 6, 1988

Before REES, Chief Justice, TUIAFONO, Associate Judge, and VAIVAO, Associate Judge.

Counsel: For Plaintiff, Togiola T.A. Tulafono
For Defendant Si'ufanua, Tau'ese P. Sunia
For Defendant Alai'a, Charles Ala'ilima
For Defendant Tuia'ana, Albert Mailo

This case concerns a large tract of land called Mapusaga or Mesepa, in or adjacent to the village of Faleniu. Parts of the land have also been known as Niuolosega, Alalaga, Aumalagamai, Mauga o le Sea, Vaivai, Avalua, Mulivai, Toa, Vanu, and Luale'a.

In 1903 a number of chiefs of Faleniu executed a lease of Mapusaga in favor of the Corporation of the Presiding Bishop, Church of Jesus Christ of Latter Day Saints. In 1944 a somewhat larger number of chiefs including the then holders of the Alai'a, Moea'i, Si'ufanua, and Tuia'ana titles conveyed the same land outright to the same corporation (hereinafter "the Church"). This conveyance was subject to a right of reversion in the event the land should ever cease to be used for school and church purposes.

In 1984 the Church stipulated that Mapusaga should revert to its former owners except that the Church would retain three designated parcels used for church and school purposes. This stipulation resulted in the settlement of a lawsuit brought against the Church by four chiefs of Faleniu. (Three of the plaintiffs in that case are also parties to this one; the fourth is a talking chief for the remaining party to this case.)

A few months later Moea'i, one of the chiefs whose family was entitled according to the stipulation to part of Mapusaga, surveyed virtually the whole tract and attempted to register it as Moea'i communal land. That survey and related incidents gave rise to the present litigation.

At the outset we must observe that this is perhaps the most difficult land case to confront the Court in recent years. For parties to rely almost exclusively on radically conflicting family histories, as did the parties to this case, is the rule rather than the exception in the Land and Titles Division. In the overwhelming majority of cases, however, one party can support its claim by proof of long occupation or by convincing evidence of how and when it was deprived of occupation.

Although some members of the four families involved in the present dispute apparently did live on Mapusaga at various times between 1903 and 1984, it is not at all clear that they were continuing to live on their families' former lands despite the lease and subsequent conveyance to the Church. Many members of these four families are or have been Church members, and many Church members have resided on Mapusaga whether or not they belonged to a family of Faleniu. For instance, in 1983 the Church identified 36 households on Mapusaga whose members were in some way affiliated with the Church; one such household was headed by a member of the Moea'i family who was a witness in the present case. If the evidence had established so much as a distinct pattern of residence during the Church occupation --- Moea'is in one part of Mapusaga, Alai'as in another, Si'ufanuas and Tuia'anas someplace else --- we might infer a similar pattern prior to 1903. Since no such pattern emerged, evidence that family members were among the people who lived on Mapusaga during Church times is of little probative value. Even less useful is the evidence presented by some of the parties to the effect that they asserted ownership of parts of Mapusaga during the 1980s when the rush to share in the pending reversion was underway.

We are left with several kinds of evidence on which to sort out the parties' claims as best we can:

--- First, we are bound by the result in one High Court case, Siufanua v. Uele, 2 A.S.R. 462 (1949), which resolved conflicting claims of ownership to a small part of the land now in dispute.

--- Second, at trial we noted without objection our intention to take judicial notice of

the proceedings in the 1949 case cited above and in other cases involving Mapusaga or adjacent lands. These include <u>Alai'a v. Talanoa</u>, LT No. 93-1948; <u>Moea'i v. Corporation of the Presiding Bishop</u>, 4 A.S.R. 36 (1971) (LT No. 1151- 70, formerly CA No. 91-66); and <u>Tuia'ana v. Corporation of the Presiding Bishop</u>, CA No. 108-83. Although testimony and exhibits in former cases can be presumed to have been as self-serving as those in the present case, they are sometimes helpful in providing historical context, prior consistent or inconsistent statements by a current party or his predecessor in title, and occasional bits of evidence that are highly credible because offered by a party who had no reason to lie about the point they tend to establish.

--- Finally, however, we must choose among the sharply conflicting testimonies offered at trial by reference wherever possible to relatively objective factors such as the internal coherence and consistency of a witness's testimony, the strength or weakness of his apparent motives to tell anything but the whole truth, and conflict or absence of conflict of a witness's testimony with the relatively objective sources of evidence recounted above. When these factors are not present we must hazard our own estimates of the witnesses' demeanor and of the inherent plausibility or implausibility of their testimonies.

Of the several versions of the history of Mapusaga the least plausible is that offered by Moea'i. His family history holds that all nine tracts named as parts of Mapusaga in the 1903 lease were Moea'i lands, and that other chiefs were mentioned in the deed and in the 1944 conveyance only because the Church wanted an endorsement or guaranty from the whole village. There is some tension, if not absolute contradiction, between this version of the documents in question and the words of the documents themselves. Although the 1903 lease does speak of the "parties of the first part" as "Chiefs and Rulers of the town of Faleniu," it goes on to refer to them as "the said lessors" and to provide that at the end of the term of the lease they may "have again, retain, re-possess and enjoy, as in their former estate." This strongly implies that more than one of "the said lessors" was more than just a guarantor, possessed of an estate in Mapusaga. The 1944 deed

again names a number of chiefs as parties of the first part and provides that if the land ceases being used for church and school purposes it will immediately revert "to the first parties, their heirs or assigns." If the contracting parties in 1903 or 1944 regarded Moea'i as the sole owner of all Mapusaga they chose singularly misleading ways to say it.

The testimony of Moea'i that the $1000 given by the Church to "the parties of the first part" was in fact given to and retained by the then Moea'i was contradicted by other witnesses, including Tuia'ana whose testimony on this point did not seem designed to help his own case. Moreover, Moea'i's current claim to own all of Mapusaga is considerably more ambitious than his and his predecessors' position in prior lawsuits dealing with the same issue. In the 1949 case the then Moea'i testified that Si'ufanua and Tuia'ana owned certain tracts; in this case the current Moea'i has surveyed parts of these tracts and claims them as his own. In 1966 Moea'i brought an action against the Church attempting to enforce the reversionary clause; in the course of that action he asserted his claim to ownership of "approximately ten acres" of the land included in the deed to the Church, and filed a survey of his claim. The survey includes land called Vanu, Avalua, and part or all of Niuolosega and Vaivai; it makes no mention of the other five tracts and excludes large areas of Mapusaga that Moea'i now claims to own. Again in the 1983 case, Moea'i joined with other parties to this case in asserting that until 1944 "[p]laintiffs' predecessors in matai title were lawfully seized and in possession . . . of various contiguous parcels of communal land, collectively described as" the tract called Mapusaga set forth in the deed.

Moea'i's insistence that he owns all of Mapusaga leaves the court with scant evidence on which to determine what part his family actually does own. In addition to the family history recounted above, Moea'i proved that he had objected to some building permits during the 1980s, that a few members of his family are among the people living on various parts of Mapusaga, and that a member of his family is buried in the Church cemetery along with other Church members. The only parts of Mapusaga to which he made a more convincing claim of ownership than any other party

89

were the parts not claimed by any other party. These are the areas designated on Moea'i Exhibit 8 as "Vanu" and "Avalua," and the area in the northeast corner of the Moea'i survey that is beyond the boundaries of the Tuia'ana survey. The latter area is on a mountainside and corresponds roughly to the tract designated "Mauga o le Sea" in Moea'i Exhibits 12 and 14. Although it is outside of the area claimed by Moea'i in the 1966 case, no one else now claims it and other parties acknowledged at trial that Moea'i has plantations there. Moea'i therefore has the right to register these tracts insofar as they are within his survey.

The claim of Tuia'ana is also problematic. Tuia'ana was not one of the chiefs named in the 1903 lease. He calls his land Luale'a and insists that it has never been called by any other name, yet no land Luale'a is mentioned in the lease or in the subsequent deed. It is of course possible that the present Tuia'ana was mistaken about Luale'a never being called by another name. It is also possible that some other chief or talking chief represented Tuia'ana in 1903, just as Seigafo and Alai'a seem to have represented each other from time to time. Without more, however, Tuia'ana's family history and personal recollections would be insufficient to rebut the implication that Tuia'ana and Luale'a had nothing to do with Mapusaga before 1903.

Tuia'ana is, however, a signatory to the 1944 deed and is named therein as a co-owner of Mapusaga. His case is further strengthened by the 1949 proceedings, in which everyone present including Si'ufanua and Moea'i acknowledged Tuia'ana to be the owner of a tract called Luale'a to the east of Aumalaga and Toa. At the conclusion of the case the Court held Luale'a to include at least part of the land now in dispute. (This is clear from a comparison of Exhibits 21 and 23, depicting the tract disputed in 1949, with the western portion of Exhibits 9 and 20, depicting the Tuia'ana survey. The southern portion of the 1949 survey is clearly within the northern boundary of the Moea'i survey as depicted in Exhibit 8.) We are bound by the rule of res judicata to observe and enforce that holding.

The Court and all the witnesses in the 1949 case were clearly of the opinion, moreover, that the tract surveyed in that case comprised only a

90

part of Luale'a, which extended some distance to the east of the surveyed portion. This comports closely with Tuia'ana's survey, whose southern and western boundary is the stream that was also the southern and western boundary of the tract surveyed in 1949, and which extends to the east about 1100 feet further than the tract surveyed in 1949.

Alai'a acknowledges that Tuia'ana owns the land on the northeast side of this stream. Si'ufanua, who began by claiming this land as his own, at the time of trial withdrew his claim to the land on the northeast side of the stream and acknowledged Tuia'ana as the owner. Only Moea'i opposes Tuia'ana's claim; yet Moea'i in 1966 drew his own northeastern boundary at the stream and claimed none of the land now claimed by Tuia'ana. Accordingly, Tuia'ana has the right to register the land contained in his survey and also in the Moea'i survey, with the exception of lands designated in Exhibit 8 as retained by the Church.[1]

Proceeding to the claim of the Alai'a or Alai'asa family, we accept for the purposes of this opinion the unrebutted testimony of Alai'a that Seigafo is a talking chief of the Alai'a family and that the terms "Alai'a land" and "Seigafo land" can be used interchangeably. We express no opinion on the details of the relationship or on the relative rights of Alai'a and Seigafo to communal land held to belong to one or the other.

It seems clear beyond peradventure that Mapusaga included part of an Alai'a or Seigafo tract called Toa. The 1903 lease includes on its face "part of Toa." Seigafo is one of the 1903

---

[1] At one of the pre-trial conferences the parties stipulated that all of Tuia'ana's survey would be tried in this case. Assuming that Tuia'ana's survey has been offered for registration and that no one who is not a party to this case has objected to it, Tuia'ana may register it except insofar as it encroaches on land retained by the Church. If, however, it has not been offered for registration, or if anyone not a party to this case has objected, then Tuia'ana may not register any portion outside the Moea'i survey and the portion already registered pursuant to the 1949 decision.

signatories; both Seigafo and Alai'a signed the 1944 deed. In the 1949 case all parties acknowledged that Toa was Seigafo land. Si'ufanua identified this land as "to the west of the creek toward Leone" from the land then in dispute. This corresponds exactly to its location in the present survey of Alai'a. It is also consistent with the objection by Alai'a in 1948 to an attempted registration of land called Maugasa which apparently overlapped the northwestern corner of the land now in dispute. Alai'a complained that the Maugasa survey was "not right and it is overbounded," encroaching on land called Toa which is "the land of Alai'a and Seigafo." (Exhibit 16; See LT 93-1948.)

Although Si'ufanua now claims to own Toa, the earliest evidence of such a claim is the 1979 conveyance of a tract outside the boundaries of the land presently in dispute purporting to be part of Toa. In 1949, however, the then Si'ufanua was certain that Toa was Seigafo land and that his own land in the vicinity was on the opposite side of the stream and was called Aumalaga (also referred to as Aumalagasa, Aumalagava, and possibly Aumalagamai) and Matavai.

Similarly, Moea'i more or less agrees with Alai'a and with the late Si'ufanua about the location of Toa (see Exhibits 12 and 14) but seems never to have claimed land called Toa until he commissioned his present survey in 1985. In 1966 he did assert ownership of much of what Alai'a now claims, apparently under the names Niuolosega and Vaivai. To the northwest of the 1966 Moea'i survey, in an area apparently within the boundaries of the land now in dispute and also within the boundaries of what other parties have regarded as Toa, is the notation "claimed by Seigafo."

The Alai'a claim to a tract called Toa bounded on the northeast by the aforementioned stream seems also to have been recognized at one time by Tuia'ana. Asked at trial by counsel for Alai'a whether he had given Alai'a to understand that he recognized the stream as a boundary between their respective properties, Tuia'ana responded, "I would like to say that no matter how many conversations do people have they are not formal and recorded conversations." The inescapable conclusion is that he did make such a statement but wished to avoid taking sides at trial.

It is clear that the northwestern boundary of Toa extended somewhat beyond the boundary of the area conveyed to the Church. (See Exhibits 1, 12, and 16; see also the testimony of Si'ufanua in the 1949 case to the effect that the homes in Toa just across the creek from his land were occupied by "school people," but that Seigafo people have plantations on Toa "underneath the mountain.") The southern and eastern boundaries are far less clear. Alai'a testified to the effect that his family history establishes the southern/southwestern boundary at a second stream, about 500 feet toward Leone from the first stream, and that the southeastern boundary extended at least as far as the government road. Another witness testified that these boundaries had been pointed out to him by the then Alai'a during the Second World War as boundaries of the portion of Toa that had been leased to the Church. A third witness testified that even during the term of the Church lease his immediate family had served Alai'a and lived on what they regarded as Alai'a communal land within Mapusaga; the locations in which members of this witness's family resided lend some support to the southern and eastern boundaries claimed by Alai'a. It was also observed by counsel that people in Samoa and elsewhere often establish their boundaries along streams and thoroughfares.

This evidence, although plausible, is rather thin. Yet it is thicker than the evidence put on by either of the other two claimants to this area, Moea'i and Si'ufanua. Moea'i concentrated on his claim to own all Mapusaga and therefore put on no convincing evidence in what is essentially a boundary dispute between the strong claim of Alai'a in the north and west and Moea'i's own claim (comprising at least Avalua) in the south. Si'ufanua initially claimed almost as much as Moea'i and apparently decided on or shortly before the day of trial to concede about half of his claim to Tuia'ana. He inexplicably devoted much of his own testimony to a discussion of the chiefly ranks of the various parties, and never got very specific about boundaries. (He seemed confused even about the location of the area he had won in 1949.) The evidence, such as it is, preponderates in favor of the boundaries asserted by Alai'a. Alai'a therefore has the right to register that portion of his survey which is also within the Moea'i survey, with the exception of the tracts retained by the

93

Church and without prejudice to whatever rights Seigafo may have.

Two portions of the land in dispute belong, according to the preponderance of the evidence, to Si'ufanua. One of these parcels is part of the larger tract held to be Si'ufanua property in 1949. It is bounded on the south and west by a stream (of the two streams discussed above, the one toward the northeast or Fagatogo); on the east by a line bearing S 6° 20' E (the western boundary of the Tuia'ana survey); and on the north, for the purposes of the present case, by the northern boundary of the Moea'i survey. Si'ufanua may of course register this tract if he has not done so already.

The other Si'ufanua tract is on the Leone side of the other stream, the one toward the southwest or Leone. This land was claimed only by Si'ufanua and Moea'i. Moea'i did not claim it in 1966 but designated it on his survey that year as "claimed by Si'ufanua"; witnesses for other parties testified that Si'ufanua has a house and plantations in this area. Therefore Si'ufanua may register the area within the Moea'i survey on the southern side of the stream that marks the southern boundary of the Alai'a survey.

We note that the parties or their representatives have stipulated that the head of any household residing on Mapusaga as of November 12, 1984, may choose either to render tautua to the matai on whose land the residence is located or to enter into a leasehold agreement, the householders in either case to retain title to their improvements to the real property. Tuia'ana, the owner of the land on which the Church cemetery is located, also stipulated that the cemetery would be maintained as such in perpetuity. Interim Stipulation and Stipulation for Dismissal, CA 108-83.

ORDER

Each party may register the portions of Mapusaga described in the opinion as his family's communal land.

It is so ordered.